### EDDY et al. v. LETCHER.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1893.)

#### No. 163.

RAILROAD COMPANIES—NEGLIGENCE—ACCIDENT TO TRAINS.

A railroad company which had the right to run its trains into a certain town over the tracks of another company, then in the hands of receivers, duly notified the yard master of the latter at that place that an extra train would arrive about 10 A. M. on a certain day. The yard master communicated this intelligence to the foremen of the several switching engines, but the foreman of one engine neglected to notify his engineer; and the latter, while looking backward at the cars in his charge, ran his engine into the extra, thereby killing a passenger. *Held*, that the receivers were liable for the death, and this notwithstanding the fact that

the extra was so late that, under the rules of the yard, the switch engine had a right to occupy the tracks, for the want of notice prevented the keeping of a proper lookout.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

In Equity. Foreclosure proceedings against the Missouri, Kansas & Texas Railway Company. The hearing was on an intervening petition by Annie Letcher against George A. Eddy and H. C. Cross, receivers, to recover damages for the death of Harvey Letcher by the wrongful neglect of respondents. A decree was rendered for the petitioner. The receivers appeal. Affirmed.

Statement by SHIRAS, District Judge:

The appellants in this proceeding, Messrs. Eddy and Cross, are the receivers of the Missouri, Kansas & Texas Railway. The St. Louis & Hannibal Railway Company, by a written contract between that company and the appellants as receivers, had secured the right to run its train over the tracks of the Missouri, Kansas & Texas Railway into the city of Hannibal, Mo., from the point where the roads of the two companies intersected at a junction about three miles southwest of Hannibal.

On the 2d of August, 1890, the St. Louis & Hannibal Railway Company ran a special excursion train from Gilmore to Hannibal, arriving at the latter place about 10:40 A. M. When this train had nearly reached the Union Depot in Hannibal, and was upon the track of the Missouri, Kansas & Texas Railway, a collision occurred with a switch engine belonging to the latter company, and operated by the appellants as receivers thereof; and one Harvey Letcher, a passenger on the excursion train, was killed. Annie Letcher, the widow of Harvey Letcher, thereupon filed an intervening petition in the foreclosure proceedings wherein the appellants have been appointed receivers, claiming damages against the receivers, upon the ground that the collision and consequent death of her husband was due to negligence on part of the employes of the receivers in charge of the yard and switch engine of the Missouri, Kansas & Texas Company at Hannibal. The questions arising out of the issues thus created were sent to a master for hearing and report, before whom a large amount of testimony was taken.

The master, among other findings of fact, reported the following as established by the evidence: "That early in the day of the fatal collision the train master of the Short Line Company notified the yard master of the M., K. & T. Company, as it was his duty to do, that an extra passenger train would be run into Hannibal by the Short Line Company on that day, and that it would reach the Union Depot at about 10 o'clock A. M. Thereupon the yard master of the M., K. & T. Company notified the foreman of each of the several switch engines in the M., K. & T. yards, including the foreman of switch engine No. 91, of the existence of this extra train for that day, and of the time at which it was expected to arrive and pass through the yards. This information, however, the foreman of the crew in charge of said switch engine No. 91 failed to communicate to his engineer, the latter in fact having no knowledge whatever of the existence of the excursion train until the moment of the collision. During the time his train, which consisted of ten freight cars, was passing down the yard towards the Union Depot, immediately before the collision, the engineer in charge of this switch engine was leaning partly out of his cab window, looking back for signals from others of his crew. He did not see the Short Line engine ahead of him until notified by his fireman, when he turned, and saw that the two engines were then not more than twenty-five or thirty feet apart. His station being on the inside of the curve as the train moved forward, he could have seen the Short Line engine as it moved from behind the M., K. & T. passenger train towards him at a time earlier than the position of his fireman on the other side of the engine enabled the latter to discover it, but was still looking back at the time his fireman discovered the danger. On being notified by the

fireman he immediately applied the brakes, reversed his engine, and took hold of the throttle to give her steam; but just at that moment the two engines struck."

The conclusion of the master in favor of the right of recovery on part of the intervener was affirmed by the court upon the ground that the proximate cause of the accident was the failure to give the engineer of the switch engine notice of the expected arrival of the excursion train.

From the judgment rendered in favor of the intervener, the receivers have appealed to this court.

George P. B. Jackson, (John Montgomery, Jr., on the brief,) for appellants.

James P. Wood, for appellee.

Before SANBORN, Circuit Judge, and NELSON and SHIRAS, District Judges.

SHIRAS, District Judge, (after stating the facts.) It does not seem necessary to enter upon any extended discussion of the evidence in order to show that the conclusion and judgment of the court below are correct, and must be affirmed. When the St. Louis & Hannibal Company determined to run an excursion train to Hannibal, certainly common prudence required that notice of the coming of this extra train should be given to the parties in charge of the yard and depot grounds at Hannibal. If the company had sent this extra train to Hannibal without giving notice of its coming, and a collision had occurred with another train in the yard at Hannibal, it would be clear that the fault would lie at the door of the St. Louis & Hannibal Company. In fact, notice of the coming of the train was sent to the depot master at Hannibal. The purpose of the notice was that parties in charge of other trains or engines might be warned of the coming of the excursion train, and thus be enabled to do whatever was necessary to prevent a collision with the incoming train. The sending of the notice would be of no effect unless it was communicated to the parties handling the engines at the yard. It was sent to the proper person in the first instance, to wit, the yard master at Hannibal. He, in turn, communicated it to the foremen of the several switch engines, but the foreman of switch engine No. 91 did not notify the engineer in charge of that engine, and he was permitted to engage in the work of switching in the yard and upon the track upon which the excursion train was coming, without being notified of the fact that an excursion train was coming in, and was fully due to arrive at the station. Certainly those who were upon engine No. 91 and those who were upon the excursion train were thus subjected to a danger of collision which would have been avoided if the engineer of No. 91 had been notified of the coming of the excursion train.

The subjecting the parties upon these trains to a risk which could have been so easily avoided was certainly negligence, for the consequences of which the receivers must be held liable.

If the engineer had been notified of the coming of the excursion train he would undoubtedly have kept a lookout for its ap-

proach, and would have run his engine at a speed commensurate to the risk, even if it be true that he had the right of way as against the excursion train, as is claimed on behalf of appellants.

Even if the fact be that the excursion train did not arrive at the notified time, and was so late that, under the rules of the yard, the switch engines could rightfully be put to work in switching within the limits of the yard, nevertheless it was the fact that the excursion train was liable to arrive at any moment. If a switch engine went upon the track upon which the excursion train was coming, thereby a liability to collision would be caused, and that undeniable fact called for the exercise of due watchfulness on part of those in charge of the engine that did go upon the track upon which the excursion train was approaching.

The facts show that a proper lookout for the approaching train was not kept by those in charge of engine No. 91, which, in turn, was due to the failure on part of the foreman to notify the engineer of the fact of the coming of the excursion train. The facts show negligence in the management of the switch engine, which aided in causing the accident, and for the consequences thereof the appellants were rightly held liable.

Affirmed.