FLIPPIN v. KIMBALL et al.

(Circuit Court of Appeals, Fourth Circuit.　May 3, 1898.)

No. 239.

1. CHANCERY PRACTICE—SUITS AGAINST RECEIVER—JURY TRIAL.
　　Where a complainant, instead of proceeding at law, under 25 Stat. 433, against a receiver appointed by a federal court, intervenes in the receivership proceeding on the chancery side, he waives his right to trial by jury; and, if the court submits an issue of fact to a jury, the verdict and findings are merely advisory.

2. MASTER AND SERVANT—FELLOW SERVANT.
　　One of a gang of men engaged in clearing away a railway wreck is a fellow servant of the acting foreman of the gang, and cannot recover damages from the company for an injury received through the alleged negligence of such foreman.

This case comes up on appeal from the circuit court of the United States for the Eastern district of Virginia.

Upon bill filed in the court below by the Fidelity Insurance, Trust & Safe-Deposit Company et al. against the Norfolk & Western Railroad Company, and the proceedings thereunder, the appellees, F. J. Kimball and Henry Fink, had been appointed receivers. While the company was in operation under them, the appellant, one of their employés, was injured. He intervened in the main cause by petition, setting forth the facts attending his injury, with this alternative prayer for leave to file his petition, and "to sue the receivers in the circuit court of the United States for the Eastern district of Virginia, on its common-law side, and that your honors may order and direct that the said receivers do appear and defend said suit whenever the same is instituted, or that your honors will make the petitioner a party to this cause now pending, and direct an issue out of chancery to settle the facts above recited, and will award such damages unto your petitioner as he is entitled to recover hereby," and for general relief.　On motion of the petitioner leave was given to him to file the petition, which was done, and the receivers were ordered to answer the same.　The answer was filed as directed, and on motion of the petitioner a jury was impaneled to try the issues raised upon petition and answer.　These issues grew out of the allegations of these pleadings.　The petition, after stating that the petitioner was in the employment of the receivers as a yard hand, and that his duties were confined to labor upon section 22, alleges that he was ordered by the foreman of his section to go with him to the scene of a train wreck upon section 21, for the purpose of assisting in removing a certain wrecked train of the company from the track; that he had no knowledge of this kind of work, but that he obeyed orders, and went to the wreck, and worked under the direction and control of Emmett Ferrell, sometimes called Hanna, who was not a regular manager of such work, but was that day a substitute for B. C. Hanna, the regular manager; that by reason of the inexperience of Emmett Ferrell, sometimes called Hanna, and by reason of the negligence and carelessness of the officers and agents of the receivers, and also by reason of defective appliances used in and about the wreck, the derrick which was then and there used was negligently and carelessly upset, and fell over and upon the left foot of the petitioner, crushing it, and necessitating its amputation.　The answer says that Emmett Ferrell (called Hanna in the petition) was not manager of the wreck car, but acting foreman wrecker.　It denies that he was either ignorant or inexperienced, and avers that he was thoroughly competent for the work.　It denies that there was any carelessness or negligence on the part of any of their agents or employés, or that there were any defective appliances, or that defective appliances had anything to do with the accident, which was one of those inexplicable and unavoidable accidents that are liable to occur with the best management; and that the danger, if any, was as apparent to petitioner as any one else.　A jury having been impaneled,

testimony was taken before the judge who ordered the trial and a verdict was found by the jury on the issues joined for the petitioner, fixing his damages at $13,500. The respondents entered a motion to set aside the verdict on the grounds that it was contrary to the law of the case, contrary to the evidence in the case, unsustained by the evidence, and that the damages were excessive. The court below, "being of the opinion that the negligence, if any, was that of a fellow servant with petitioner, and that the damages awarded are excessive," set aside the verdict, and dismissed the petition. The case comes here on five assignments of error. The first, second, and third assign as error the setting aside of the verdict, and not entering a decree thereon for the petitioner. The fourth assigns as error the dismissal of the petition on the ground of negligence of a fellow servant, because the persons through whose negligence the accident occurred were not fellow servants of the petitioner, because the accident was caused by defective appliances, and because the person whose negligence caused the accident was known to be unfit and improper. The fifth assigns as error the holding the damages excessive.

Edmund Waddill, Jr., and Edgar Allen, for appellant.

Robert M. Hughes, for appellee.

Before GOFF and SIMONTON, Circuit Judges, and PAUL, District Judge.

SIMONTON, Circuit Judge (after stating the facts). The appellant, Flippin, could have proceeded in an action at law against the receivers without leave of the court. 25 Stat. 433, Act 1888. Of his own accord he intervened in a suit in equity, and submitted himself to the jurisdiction of the court. By doing this he waived his right to a trial by jury, for it is a fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or perplexity. Barton v. Barbour, 104 U. S. 133. This case being one of equitable jurisdiction only, the court was not bound to submit any issue of fact to a jury, and, having done so, was at liberty to disregard the verdict and findings of the jury, either by setting them, or any of them, aside, or by letting them stand, and allowing them more or less weight in its final hearing and decree according to its own view of the evidence in the cause. Improvement Co. v. Bradbury, 132 U. S. 509, 10 Sup. Ct. 177. So, when the court below, in accordance with the prayer of the petition, ordered an issue out of chancery to try the issues, the verdict was only advisory, and not conclusive upon the court. It had the right to disregard it, and even to render a decree contrary to it. Watt v. Starke, 101 U. S. 247. These authorities dispose of the assignments of error which look to the result of the verdict of the jury. It was for the court below alone to determine its force and effect, and this court cannot deny its right to disregard it.

Having set aside the verdict, the circuit court proceeded to consider the case, and dismissed the petition. This was in accordance with rules of equity procedure. A similar course was sustained by the supreme court in Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298. It is alleged as error that the court dismissed the petition upon the ground that the negligence, if any, causing the accident, was that

of a fellow servant of the petitioner. The assignments of error proceed upon the grounds that the foreman in charge of the wreck was wholly incompetent for the performance of his duty; that the appliances used were defective, and that superior officers of the receiver were present directing, in whole or in part, the operations; and that the foreman in charge of the wreck was entirely inefficient; and that in no event was he the fellow servant of petitioner. As this is an appeal in equity, we must examine the testimony, which is spread out in full on the record. The petitioner, at the time of the accident, was 24 years of age. He had been in the employment of the receivers one month as a section hand, and had seen service before on railroads for two months and a half. The wreck occurred about two miles from Crewe, where he was employed, and he was ordered by his section master to go with other hands to the wreck to assist in clearing the track. The gang engaged in this work was made up of hands from several parts of the road, who were under the direction of Emmett Hanna or Ferrell. This man was the adopted son of Capt. B. C. Hanna, who was wrecking master, and was his chief assistant, acting for him in his absence. On this day the elder Hanna was engaged on another part of the road. The evidence shows that Emmett Ferrell had the perfect confidence of his chief; that, notwithstanding his youth (he was either 22 or 23), he had had large experience; and he enjoyed among the railroad people the reputation of a skillful and efficient man in charge of wrecks. It also appears from the evidence that on the day of the accident he was in full charge, and although there were present Sowers, the track supervisor, Wells, the road foreman of engines, Sanderson, assistant superintendent of the motive power, and perhaps other officials, none of them assumed charge of the wreck, as it was not in the line of their duties, but left everything to Ferrell. Nor does the preponderance of the evidence lead to the conclusion that the appliances used were defective. It is true that in the beginning a rope used at the derrick broke, but nothing occurred as the result of it, and, the rope having been mended, or another substituted, no further break occurred. The accident probably occurred because, the cars not having been fastened to the track, there was too much weight upon the derrick, and a lateral strain. These caused it to upset, and so the petitioner was hurt. If there was negligence in this, it was the negligence of Emmett Ferrell, who was at the time directing the operations, and himself assisting in arranging the blocks to the wheels of a car. These blocks were not regularly prepared, but were made of fence rails, parts of cross-ties, and wood picked up on the track. Evidence was offered showing that on one system of railways wrecking cars always carried blocks prepared for and suitable to this purpose. But there is no evidence of a custom or usage of this character; nor is there evidence that ordinary blocks, obtained as those were on this occasion, do not serve their purpose. It must be remembered that there is no presumption of negligence in this case against the defendant, the action being by an employé against an employer. The burden is on the petitioner. Railroad Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707. So the case really turns upon the

point, which controlled the circuit court, if the accident was the result of negligence, the negligence was that of Emmett Ferrell; and the question is, was he the fellow servant of the petitioner? He was the foreman or acting foreman of a wreck car at the wreck. His position is thus explained by Mr. Sanderson, who seems to be an intelligent witness:

"He is a boss or acting foreman at that time in charge of a gang or collection of men who may have been gathered up as has been most convenient; exactly the same relative position as a section foreman or car foreman would be with a gang working under him."

In determining this question it is unnecessary to quote the multitude of decisions bearing upon it, often contradictory, and frequently obscure. The general rule is well stated in a note to Railroad Co. v. Smith, 8 C. C. A. 670 (s. c. 59 Fed. 993), quoting for its support many authorities:

"It makes no difference in the application of the rule exempting the master from liability for injuries to his servants for the acts of the co-servants that the one receiving the injury is inferior in grade and subject to the orders of the one by whose negligence the injury is caused, if both are engaged in the same general business, accomplishing one and the same general purpose."

We held in Thom v. Pittard, 8 U. S. App. 597, 10 C. C. A. 352, and 62 Fed. 232, that section men and laborers on repair trains, being engaged in the common purpose of keeping the railroad in order, are fellow servants. In Deavers v. Spencer, 25 U. S. App. 411, 17 C. C. A. 215, and 70 Fed. 480, this court held that a track hand, who was injured by the alleged negligence of the track foreman while he was working on a railroad, was the fellow servant of the foreman, and could not recover against the receivers for the injuries he had suffered. In the circuit court of appeals of the Fifth circuit—McGrath v. Railway Co., 23 U. S. App. 86, 9 C. C. A. 133, and 60 Fed. 555—it was held that "a railroad employé, who was one of a gang of men employed to remove a wreck, cannot recover from the company for injuries caused by the negligence of the wreck master, who has charge of the wrecking car." And in Railway Co. v. Rogers, 13 U. S. App. 547, 6 C. C. A. 403, and 57 Fed. 378, the same court held that the acting foreman of a gang of laborers engaged in repairing a bridge was the fellow servant, engaged in the same employment, with a member of the gang who was injured by the falling of a piece of timber during the repairs of the bridge. Besides this, the petitioner is a man matured. He was in the employment of the receivers as a section hand to work on the track. He was not placed in a position of undisclosed danger; but he was doing work whose risks were obvious. Necessarily he assumed those risks when he went on with his work, and the mere happening of the accident cannot impute negligence to his employer. Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298. The judgment of the circuit court is affirmed.